*☛ 1/2/2020*
*10:10AM*
*CZ #487*

CAUSE NO. 201990193

RECEIPT NO.               0.00     ATY

\*\*\*\*\*\*\*\*\*\*           TR # 73709074

| | |
|---|---|
| PLAINTIFF: COPPERTREE VILLAGE HOLDINGS LLC<br>    vs.<br>DEFENDANT: TRIUMPH HOUSING MANAGEMENT GROUP LLC | In The    157th<br>Judicial District Court<br>of Harris County, Texas<br>157TH DISTRICT COURT<br>Houston, TX |

CITATION (NON-RESIDENT)

THE STATE OF TEXAS
County of Harris

TO: GATES, DAVID
     OR WHEREVER HE MAY BE FOUND

     1526   CHERRY LAKE WAY    LAKE MARY   FL   32746

     Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 27th day of December, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:

     This citation was issued on 30th day of December, 2019, under my hand and
seal of said Court.

**EXHIBIT**

**A**

Issued at request of:
PAYNE, CAROL COLLINS
3500 MAPLE AVE SUITE 1100
DALLAS, TX 75219
Tel: (214) 599-4007
Bar No.: 788865

*Mar Burgess*

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: HILL, MARCELLA   DBG//11407931

STATE OF _____

County of _____

OFFICER/AUTHORIZED PERSON RETURN

PERSONALLY APPEARED before me, the undersigned authority, _____
who being by me duly sworn, deposes and says that in the County of _____
State of _____ he delivered to the within named defendants in person at the
following times and places to wit:

| NAME | DATE | | | TIME | | PLACE |
|---|---|---|---|---|---|---|
| | MONTH | DAY | YEAR | HOUR | MIN | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

a true copy of this notice, with a copy of:

accompanying same; and further, that he is an adult and is in no manner interested in this suit
and is the person competent to make oath of the fact.

Marilyn Burgess - District Clerk Harris County
Envelope No. 39532110
By: Marcella Hill
Filed: 12/27/2019 4:51 PM

## CAUSE NO. _____

| | | |
|---|---|---|
| **COPPERTREE VILLAGE HOLDINGS,** | § | **IN THE DISTRICT COURT OF** |
| **LLC AND COPPERTREE APARTMENTS** | § | |
| **LLC,** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **TRIUMPH HOUSING MANAGEMENT,** | § | |
| **LLC, PAUL J. PONTE, DAVID GATES,** | § | |
| **GREGORY B. JONES, AND BRADLEY A.** | § | |
| **FRERICKS,** | § | |
| | § | |
|     **Defendants.** | § | |
| | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Coppertree Village Holdings, LLC and Coppertree Apartments LLC (collectively, "Coppertree" or "Plaintiffs") file this Original Petition against Defendants Triumph Management Group, LLC ("Triumph" or "Agent"), Paul J. Ponte, David Gates, Gregory B. Jones, and Bradley A. Frericks (collectively, "Defendants").

### I.   DISCOVERY LEVEL AND DAMAGES STATEMENT

1.   Discovery should be conducted under Discovery Control Plan Level 2 as described in Rule 190.3 of the Texas Rules of Civil Procedure.

2.   Plaintiffs bring suit to recover the damages they sustained as a result of Defendants' wrongful conduct in managing property owned by Plaintiffs. Defendants' wrongful and negligent acts and omissions have resulted in significant damages to Plaintiffs and Plaintiffs seek monetary relief in excess of $1,000,000.

### II.   INTRODUCTION

3.   Coppertree hired Triumph to manage an apartment complex located at 1415 W. Gulf Bank Rd., Houston, Texas (the "Coppertree Property"). Coppertree and Triumph entered

**PLAINTIFF'S ORIGINAL PETITION**                                                  **Page 1**

into a Management Contract ("Management Contract"), which set forth Triumph's obligations to rent the units at the Coppertree Property, maintain and repair the Coppertree Property, maintain records and provide Coppertree with financial reporting, provide employees to manage the Coppertree Property, and ensure that the Coppertree Property was properly insured.

4.     Triumph failed to discharge its duties and obligations with respect to management of the Coppertree Property. When Coppertree fired Triumph in March 2019, the Coppertree Property was in disrepair, Triumph had caused Coppertree losses in rental income, and units were vacant.

5.     In addition, the Coppertree Property experienced a $1.2 million fire loss in December 2017. The property insurer denied coverage for the loss and sued Triumph to rescind the policy, alleging various misrepresentations in the application process. Coppertree was not a party to the litigation. Over Coppertree's objections, Triumph colluded with the property insurer to rescind the policy and void the coverage that protected the Coppertree Property. Despite multiple requests, Triumph has provided no information to Coppertree regarding disposition of the funds paid to Triumph by the insurer, including the returned premiums.

6.     Coppertree now sues Triumph and its principals for the substantial losses Coppertree sustained as a result of Defendants' wrongful conduct, misrepresentations, and fraud in managing the Coppertree Property. As a result of Defendants' mismanagement and breaches of duties, Coppertree has suffered losses in excess of $3.5 million.

### III.     PARTIES

7.     Plaintiffs Coppertree Village Holdings, LLC and Coppertree Apartments LLC are Delaware limited liability companies with their principal place of business in Houston, Texas.

8.     Defendant Triumph is a Georgia limited liability company. Triumph conducts business in the State of Texas and may be served with the citation and this Original Petition through its registered agent for service of process -- Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, TX 78701.

9.     Defendant Paul J. Ponte ("Ponte") is an individual residing in Cumming, Georgia. He may be served with the citation and this Original Petition at 3624 Sydney Harbor Lane, Cumming, GA 30040 or wherever he may be found. On information and belief, at all relevant times, Ponte was the Co-Manager and Chief Executive Officer of Triumph.

10.     Defendant David Gates ("Gates") is an individual residing in Lake Mary, Florida. He may be served with the citation and this Original Petition at 1526 Cherry Lake Way, Lake Mary, Florida 32746 or wherever he may be found.

11.     Defendant Gregory B. Jones ("Jones") is an individual residing in Cumming, Georgia. He may be served with the citation and this Original Petition at 4455 Crossland Dr., Cumming, GA 30040 or wherever he may be found.

12.     Defendant Bradley A. Frericks ("Frericks") is an individual residing in Atlanta, Georgia. He may be served with the citation and this Original Petition at 3064 Quantum Ln, Atlanta, GA 30341-8101 or wherever he may be found.

## IV.     JURISDICTION AND VENUE

13.     This Court has original jurisdiction of this action because the damages sought are within the jurisdictional limits of this Court.

14.     In accordance with section 15.002 of the Texas Civil Practice & Remedies Code, venue is proper in this Court as a substantial part of the events and omissions giving rise to one or

**PLAINTIFF'S ORIGINAL PETITION**                                                    **Page 3**

more of Plaintiffs' claims occurred in Harris County, Texas, and Plaintiffs resided in this county at the time of the accrual of the causes of action.

## V.   AGENCY AND RESPONDEAT SUPERIOR

15.    Whenever in this Complaint it is alleged that the Defendants committed any act or omission, it is meant that Defendants themselves or their agents, officers, servants, employees, or representatives committed such act or omission, and it was done with the authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives, creating vicarious liability for Defendants.

## VI.   FACTUAL BACKGROUND

### A.   Coppertree hires Triumph to manage the Coppertree Property

16.    Coppertree owns the Coppertree Village Apartments, located at 1415 West Gulf Bank Road, Houston, Texas. The Coppertree Property is financed or subsidized by the United States Department of Housing and Urban Development ("HUD").

17.    Triumph is a property management company, which manages or managed apartment complexes for clients throughout the United States. During some of the relevant time period, Ponte, Gates, Jones and Frericks were the principals of Triumph.

18.    In July 2015, Coppertree entered into a Management Contract with Triumph, pursuant to which Triumph would manage the Coppertree Property. Ponte signed the Management Contract as Co-Manager and Chief Executive Officer of Triumph.

19.    Coppertree hired Triumph because it claimed to be a premier property management company with the experience, strong track record, and knowledge necessary to manage multi-family properties such as the Coppertree Property. Triumph represented that it possessed the skill

**PLAINTIFF'S ORIGINAL PETITION**                                      **Page 4**

and knowledge to manage the Coppertree Property. Triumph also represented that it would operate the Coppertree Property in accordance with applicable HUD rules, regulations, and policies.

**B.  Defendants' misrepresentations and Coppertree's termination of the Management Contract**

20.     To induce Coppertree to enter into the Management Contract, Ponte and Jones each represented to David Taylor ("Taylor"), Coppertree's signatory to the Management Contract, that Triumph would devote its best efforts and sufficient time and resources to properly manage the Coppertree Property and they personally would be involved in the supervision and administration of the property management function of the Coppertree Property.  Ponte and Jones also represented that they would be directly involved in the preparation and delivery of accurate and complete written and oral reports regarding the financial performance and operating condition of the Coppertree Property.  However, Coppertree would later learn that these representations were false, and it was not Ponte's and Jones' intent to fulfill their representations or to be involved with the management of the Coppertree Property.

21.     Triumph's resources were not used to manage and operate the Coppertree Property, but rather were diverted and used on properties acquired and operated by Ponte and Jones for their own benefit. Ponte and Jones negligently and/or intentionally misrepresented and omitted material facts and circumstances related to the financial performance, operations and condition of the Coppertree Property, and repeated such misrepresentations to HUD and other regulatory bodies responsible for monitoring the Coppertree Property's compliance with federal and state regulatory requirements. Triumph, Ponte and Jones made these misrepresentations in order for Triumph to continue to be paid for services it was contractually obligated to perform but failed to do.

22.     During the course of Triumph's management of the Coppertree Property, Ponte and Jones, along with Gates, continued to make representations that Triumph would devote its best

efforts and sufficient time and resources to properly manage the Coppertree Property and that they would personally and directly be involved in the management of the Coppertree Property. Ponte, Gates and Jones repeatedly made these representations to Coppertree, through David Taylor and others, so that Coppertree would continue to employ Triumph in the management of the Coppertree Property.

23.     Despite Ponte's and Jones' representations as to their continuing personal involvement in managing the Coppertree Property, Ponte and Jones privately arranged, without Coppertree's knowledge or consent, the sale of their controlling interests in Triumph to a third party.  As a result of the sale, whatever involvement Ponte and Jones had in the management of the Coppertree Property ended.  In addition, and without Coppertree's' knowledge, all accounting services related to the Coppertree Property were outsourced to a third party unqualified to provide such services.

24.     Ponte, Jones and Gates further represented that they had close working relationships with HUD and other regulatory officials and that they had earned the trust of these regulatory entities as a result of these relationships.  Despite these representations, Ponte, Jones and Gates made misrepresentations to and/or withheld material information from HUD and other regulatory officials in order to avoid responsibility for management deficiencies that would have been discovered but for such misrepresentations and/or the withholding of material information.  These wrongful acts and omissions by Ponte, Jones and Gates, eventually discovered by HUD in the summer and fall of 2018, caused harm to Coppertree's relationship with HUD and other state and federal regulatory entities and resulted in substantial damages, including substantial costs and expenses incurred to respond to and correct the management-related deficiencies discovered by HUD and the other regulatory entities.

**PLAINTIFF'S ORIGINAL PETITION**                                                     **Page 6**

25.     On or about March 18, 2019, Coppertree terminated the Management Contract due to Triumph's multiple wrongful acts, errors and omissions, breaches of duty, and violations of the Management Contract.

## C.     The Management Contract

26.     The Management Contract provides that Triumph had the "sole and exclusive right to manage and operate" the Coppertree Property and that Triumph "shall have the power and responsibility for all operations, maintenance, staffing, negotiating of contracts, and otherwise managing and operating the [Coppertree Property]."

27.     Triumph's duties and responsibilities were enumerated in the Management Contract, including provisions requiring that Triumph comply with duties relating to (1) rentals, (2) maintenance and repairs, (3) records and reports, (4) employees, and (5) insurance. Triumph also agreed to:

> (a) perform all tasks and services in a faithful, diligent and efficient manner; (b) use its best efforts to prevent waste of the assets of the [Coppertree Property]; (c) maintain businesslike relations with tenants and visitors of the [Coppertree Property]; (d) use its best efforts to collect all revenues, rents, fees and other sums and charges due from tenants of the [Coppertree Property]; and (e) operate the [Coppertree Property] in a manner in conformance with all Requirements, including HUD Requirements, and with all Project Requirements and any other reasonable directions of [Coppertree] from time-to-time, consistent with this [Management Contract].

28.     Triumph was negligent in performing the duties owed to Coppertree under the Management Contract and under applicable law and breached numerous provisions of the Management Contract. As a result, Coppertree suffered damages in the amount of at least $3,500,000.

29.     Triumph failed to disclose, misrepresented, or concealed material information from Coppertree making Coppertree's injury and damages inherently undiscoverable or fraudulently concealed.

**D.     Triumph's failure to provide rental services**

30.     Section IV.3 of the Management Contract set forth the parties' agreement regarding Triumph's rental responsibilities at the Coppertree Property. As agreed in the Management Contract, Triumph "shall offer for rent and shall use its best efforts to rent the housing units in the [Coppertree Property] in accordance with all Requirements (including HUD Requirements and Project Requirements), a rent schedule to be provided by [Coppertree] and the leasing guidelines and form of lease referred to below." The services that Triumph agreed to provide in section IV.3 of the Management Contract are referred to herein as the "Rental Services."

31.     Triumph breached both the Management Contract and its duty of care to Coppertree by failing to provide Rental Services, including but are not limited to its failure to: "show housing units for rent . . . to all prospective tenants," "take and process applications for rentals, including prospective tenant interviews and credit checks," "comply with the standard form of tenant HUD lease," "collect and deposit . . . all rents and other amounts due from any tenant . . . and collect, deposit and disburse security deposits," "maintain a current list of acceptable prospective tenants and undertake all arrangements necessary and incidental to the acceptance of rental applications and the execution of Leases," "perform such other acts and deeds as are reasonable, necessary and proper in the discharge of [Triumph's] rental duties," "participate in the inspection of each dwelling unit identified in the Lease together with tenant prior to move-in and upon move-out, and record in writing any damages to the unit at the time the tenant moved in and any damage occurring during the tenant's occupancy," "be responsible for or assist [Coppertree] in the certification and

recertification of project tenants who dwell in units covered by a Housing Assistance Payments Contract ("HAP Contract")," and "take all reasonable action to secure full compliance by each tenant with the terms of such tenant's Lease."

32.     Triumph was negligent and breached its duties relating to the Rental Services by failing to use its best efforts to lease the apartments at the Coppertree Property. When Coppertree terminated the Management Contract with Triumph and installed a new property manager, 71 of the 322 units were vacant, and most were not ready to be leased.

33.     Triumph also was negligent and breached its duties relating to the Rental Services by failing to use its best efforts to collect rent, security deposits, and repair costs from tenants. When Coppertree installed a new property manager, at least 44 tenants owed more than $1,000 in unpaid rent, and these tenants were in arrears on an average of four months for the unsubsidized portion of their rent. Triumph also failed to maintain tenants' eligibility for HUD-subsidized units, resulting in additional lost rental income. Triumph failed to properly and timely process or update tenant HUD recertifications; when the management contract was terminated, more than 45 resident recertifications were past due.

34.     Triumph did not ensure that tenants were in properly sized units, and 30 residents were on the transfer list waiting to be moved to an apartment of sufficient size for their household. If a tenant was entitled to be in a larger apartment, they should have been moved, which would have resulted in an increase in monthly rent.  Some tenants had been waiting for years for a properly sized unit, despite the availability of 71 vacant units when the Management Contract terminated.  As a result, Coppertree lost income.  Triumph also negligently maintained tenant waiting lists and failed to process certain rent increases in a timely manner, which resulted in loss of rental income.

**PLAINTIFF'S ORIGINAL PETITION**                                                   **Page 9**

**E.     Triumph's failure to maintain and repair the Coppertree Property**

35.     As the property manager, Triumph was responsible for maintaining the Property in a decent, safe, and sanitary condition.  Section IV.4 of the Management Contract set forth the parties' agreement regarding Triumph's obligations regarding maintenance and repairs at the Coppertree Property wherein Triumph agreed to maintain the Coppertree Property "in a rentable state of repair, all in accordance with all applicable Requirements." The services that Triumph agreed to provide in section IV.4 of the Management Contract are referred to as the "Maintenance and Repair Services."

36.     Triumph breached both the Management Contract and its duty of care to Coppertree by failing to provide Maintenance and Repair Services, including but not limited to its failure to pay "[s]pecial attention . . . to preventative maintenance . . . and [to provide] the services of a regular superintendent," to "contract with qualified independent contractors for the maintenance and repair of major mechanical systems, and for the performance of extraordinary repairs beyond the capability of regular maintenance personnel," to "systematically and promptly receive and investigate all service requests and complaints from tenants, take such action thereon as may be justified, and shall keep records of the same, [including using] all reasonable efforts to service emergency requests on a 24 hour basis," and to "purchase . . . all materials, equipment, tools, appliances, supplies, and services necessary for proper maintenance and repair of the" Coppertree Property.

37.     Triumph was negligent and breached its duties relating to the Maintenance and Repair Services. While Triumph was responsible for maintaining the Property, when the Management Contract terminated, the doors and windows in 7 to 10 units were so damaged that

**PLAINTIFF'S ORIGINAL PETITION**                                    Page 10

the units were not suitable for tenants, and some of these units had become occupied by homeless persons, requiring eviction of the occupants and significant repairs to the units.

38. There were past due, unfulfilled work orders from neglected tenants whose air conditioning had not worked for months during the Texas summer. Other tenants lacked working stoves and were missing dishwashers. Triumph also had failed to mow the grass, which had grown to over 18 inches.

39. While under Triumph's management, the Coppertree Property was placed in "Remedial Action" by the Houston Police Department because of excessive crime, requiring Coppertree to perform a number of remedial measures, including regular reporting to and formal inspections of the property by the City of Houston and the installation of upgraded lighting, landscaping and security, all due to Triumph's failure to maintain the Coppertree Property.

40. Triumph also failed to obtain an occupancy permit for a new community building at the Coppertree Property after its check for the permit was returned for insufficient funds.

41. Other code violations were never addressed or corrected by Triumph, and the City of Houston would not process new inspection requests for the property until the new management brought the property back up to code.

42. Other negligent and wrongful acts included Triumph's failure to properly or timely respond and resolve deficiencies identified in the Texas Department of Housing & Community Affairs 2018 inspection, resulting in two $5,000 fines to Coppertree.

43. Not surprisingly, Triumph's negligence and failure to provide Maintenance and Repair Services resulted in the overall deterioration of the Coppertree Property and its reputation, negatively affecting rental of the units and rental income.

**PLAINTIFF'S ORIGINAL PETITION**

**F.**     **Triumph's failure to provide records and reports to Coppertree**

44.     Section VI.5 of the Management Contract set forth the parties' agreement regarding Triumph's obligations as to records and reports to Coppertree.  Triumph agreed to "receive and maintain all existing records, and, on a going forward basis" establish and maintain "full and adequate books of accounts, using the accrual method of accounting, and such other records as are necessary to reflect the results of the operation of the" Coppertree Property. The services that Triumph agreed to provide in section VI.5 of the Management Contract are referred to as the "Records and Reports Services."

45.     Triumph breached both the management contract and its duty of care to Coppertree by failing to provide Records and Reports Services, including but not limited to its failure to provide "a monthly Owner's Report in the form developed by [Triumph] with the approval of [Coppertree];" "a current month rent roll showing delinquencies and vacancies to the extent not available to [Coppertree] electronically;" "a statement of income and expenses and accounts receivable and payable for the preceding month;" "a rent roll/cash receipts form for the previous month to the extent not available to [Coppertree] electronically;" "a check register for the previous month;" "current bank statements with reconciliation for the Property Accounts;" "a narrative of any unusual actions taken or emergencies responded to, and a full report of any accidents, claims and potential claims, for the previous month and any other information required by the Requirements;" "a balance sheet of the project;" "an income statement with actual vs. budget comparisons;" and "to the extent available from bank . . . copies of cancelled checks for insurance premiums paid[.]"

**PLAINTIFF'S ORIGINAL PETITION**                                            **Page 12**

46.     Triumph was negligent and breached its duties relating to the Records and Reports Services by not providing the required records and reports timely and in providing inaccurate, false, or misleading records and reports to Coppertree.

47.     Triumph's internal controls did not effectively manage its daily accounting and financial reporting in an accurate and timely manner. As a result, Triumph was unable to provide Coppertree with timely and accurate monthly financial statements, operational accounts payable, operational accounts receivable, and information to complete an audit. Triumph did not properly track and report on tenant accounts receivable, and Coppertree received monthly financial statements that included incorrect amounts for tenant accounts receivable and bad debt expense.

48.     Triumph failed to properly and effectively use OneSite, a property management software. Triumph failed to set up OneSite to capture vacancy and special claims, resulting in the failure to capture to any portion of vacancy losses through the HUD vacancy claims process. As a result, Coppertree was not able to recover an estimated 50% of the property's vacancy losses.

49.     Pursuant to the Management Contract, upon termination, Triumph was required to remit all funds deposited or remaining in any operating or trust accounts, including any tenant security deposits. Triumph failed to do so, despite repeated requests by Coppertree on July 15, August 1, September 2, and September 19, 2019. Coppertree has also discovered that Triumph over-charged and collected unearned management fees.

## G.     Triumph's failure to provide employees to manage the Coppertree Property

50.     Section IV.2 of the Management Contract set forth the parties' agreement regarding Triumph's obligations as to employees.  Triumph agreed to "determine the qualifications, and duties of the personnel to be regularly employed in the management of the [Coppertree Property], including an on-site manager . . . maintenance, and other managerial employees." The services

**PLAINTIFF'S ORIGINAL PETITION**

that Triumph agreed to provide in section IV.2 of the Management Contract are referred to as the "Employee Services."

51. Triumph's neglect of the Coppertree Property stemmed from its failure to hire, train and/or retain competent staff to manage, maintain, and operate the Coppertree Property.

52. Triumph breached both the Management Contract and its duty of care to Coppertree by failing to provide Employee Services as required by the Management Contract.

53. Triumph failed to hire an on-site manager for the 322-unit Coppertree Property as specifically required by the Management Contract. Triumph also failed to properly staff the Coppertree Property, including failing to properly hire, train, supervise, discipline, or terminate employees.

## H. Triumph's failure to ensure that the Coppertree Property was properly insured

54. Article V of the Management Contract set forth the parties' agreement regarding Triumph's obligation to "maintain insurance coverage for the [Coppertree Property]." The Management Contract specifically provided that Triumph was to maintain insurance coverage "as necessary under the Requirements or as otherwise required by . . . this Management Contract or by Owner." The Management Contract also provided at V.3 that:

> [i]f the Agent places insurance coverage on behalf of [Coppertree], Agent represents that it currently maintains and shall maintain, with financially sound and reputable insurance companies, insurance on all of [Coppertree's] properties in at least such amounts and against at least such risks as are usually and reasonably insured against by entities of similar size engaged in the same or similar business. Agent agrees that it will not unreasonably reduce the amounts or coverage of such insurance from the amounts or coverage currently in place and that it will increase such amounts and provide additional insurance against such risks such that its insurance in place, from time to time, shall be consistent with the foregoing representation.

**PLAINTIFF'S ORIGINAL PETITION**

Page 14

1.  **The GenStar policy**

55.     In August 2017, Triumph engaged The Cone Company ("Cone"), an Alabama insurance broker, to place property coverage for several properties, including the Coppertree Property.

56.     On August 23, 2017, Triumph provided Cone with a list, titled "Portfolio Under Management," that included the Coppertree Property and a request for property, general liability, and umbrella policies for the Coppertree Property.

57.     Cone then contacted AmWINS Brokerage of Alabama ("AmWINS"), a wholesale insurance broker, to assist it in obtaining a property policy for Triumph. AmWINS contacted insurer General Star Indemnity Company ("GenStar") regarding property insurance for Triumph on or about October 25, 2017.

58.     In response to a 119-page application submitted by Cone to AmWINS, GenStar issued Policy No. IAG967120, for the term November 1, 2017 through November 1, 2018 (the "Policy"). The Policy did not include the amounts of coverage that was currently in place for the Coppertree Property. Coppertree was not named as a primary insured or even as an additional named insured on the Policy; the Policy named only Triumph and certain other properties as named insureds. Moreover, the Policy included scheduled, not blanket insurance, for the Coppertree Property.

59.     GenStar did not send the Policy to AmWINS until December 7, 2017.  On information and belief, Triumph did not receive a copy of the Policy from AmWINS until spring 2018.

**PLAINTIFF'S ORIGINAL PETITION**                                              **Page 15**

### 2.   The Coppertree Property fire

60.   On December 9, 2017, barely a month after the Policy incepted and well before Coppertree received a copy of it, a fire occurred on the Coppertree Property, causing damage to Coppertree in excess of $1.2 million.

61.   Triumph reported the fire to GenStar on Coppertree's behalf. GenStar initially acknowledged the claim and accepted coverage for it, then refused to pay the claim.

### 3.   GenStar sues Triumph to rescind the Policy

62.   On April 25, 2018, GenStar sued Triumph in the United States District Court for the Northern District of Georgia, asserting claims for declaratory action based on rescission, and, in the alternative, declaratory judgment based on limited coverage. GenStar alleged that the Policy should be rescinded based upon material misrepresentations made to GenStar by Triumph during the underwriting of the Policy.

63.   In this Georgia action, Triumph asserted counterclaims against GenStar, including claims for breach of contract and reformation of the Policy.

### 4.   Triumph agrees with GenStar to rescind the Policy over Coppertree's objection

64.   While the litigation was pending, Coppertree learned that GenStar and Triumph were engaged in settlement discussions.

65.   On several occasions, in correspondence and communications with Triumph, Coppertree asked Triumph to include it in the settlement discussions and informed Triumph that it was not authorized to enter into any settlement that would harm Coppertree's ability to pursue claims against GenStar or any other party. For example, on October 3, 2019, counsel for Coppertree wrote to counsel for Triumph and stated: "Coppertree does not authorize Triumph to

**PLAINTIFF'S ORIGINAL PETITION**

bind or in any way limit Coppertree's ability to pursue claims or seek a recovery against GenStar, or any of the other parties involved in the insurance dispute outlined in the Georgia case."

66.     Ignoring this request, on November 21, 2019, Triumph informed Coppertree that it had "negotiated an agreement with [GenStar] to settle all claims between [GenStar] and Triumph regarding the Policy." The letter concluded: "Please be assured that Triumph is doing all that it is aware of to protect your interests and will provide you updates as the matter progresses." Contrary to these representations, Triumph has not protected Coppertree's interests or kept Coppertree updated on developments.

67.     Triumph, with GenStar, filed a joint motion to dismiss the Georgia case, disburse to Triumph funds representing the Policy premium in the amount of $638,878, which were held in the Georgia court's registry, and rescind the Policy.  The Georgia court signed GenStar and Triumph's Consent Order to Dismiss Suit, Disburse Funds, and Rescind Policy on December 13, 2019. The Georgia court ordered that the court clerk disburse the Policy premium held in the court's registry directly to Triumph by check.

68.     Based on the collusive agreement between GenStar and Triumph to rescind the Policy despite Coppertree's pending claim, GenStar maintains that Coppertree cannot maintain any claim under the Policy for its losses relating to the December 9, 2017 fire.

69.     Triumph has ignored Coppertree's requests for information regarding the disposition of the settlement funds or the returned premium that does not belong to Triumph.

## VII.   CAUSES OF ACTION

### Count I – Breach of the Management Contract (Against Triumph)

70.     Coppertree realleges and incorporates each and every foregoing paragraph as if fully set forth herein.

**PLAINTIFF'S ORIGINAL PETITION**

71.     The Management Contract is a valid and enforceable contract.

72.     Under the Management Contract, Triumph agreed to provide Rental Services, Maintenance and Repair Services, Records and Report Services, and Employee Services on behalf of the Coppertree Property. Triumph also agreed to ensure that the Coppertree Property was properly insured.

73.     Coppertree fully performed all obligations under the Management Contract and paid Triumph fees for its property management services.

74.     As set forth above, Triumph breached its contractual obligations to provide Rental Services, Maintenance and Repair Services, Records and Report Services, and Employee Services. Triumph also failed to ensure that the Coppertree Property was properly insured as required by the Management Contract.

75.     Triumph further exacerbated the damages caused by its breaches through its agreement with GenStar to rescind the Policy in violation of Triumph's agreement to ensure that the Coppertree Property was properly insured.

76.     Coppertree has been damaged by Triumph's breaches of the Management Contract.

77.     Coppertree is entitled to recover its reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## Count II – Defendants' Violations of § 17.46(b) of the Texas DTPA for Deceptive Acts or Practices (Against Triumph, Ponte, Gates, Jones and Frericks)

78.     Coppertree realleges and incorporates each and every foregoing paragraph as if fully set forth herein.

79.     Coppertree is a "consumer" as defined by TEX. BUS. & COM CODE § 17.45(4). Coppertree sought to acquire and/or acquired goods or services from Triumph.

**PLAINTIFF'S ORIGINAL PETITION**                                    **Page 18**

80.     Defendants violated TEX. BUS. & COM CODE § 17.46(b), which provides that the term "false, misleading, or deceptive acts or practices" includes: (7) representing that "services are of a particular standard [or] quality;" (12) "representing that an agreement confers rights, remedies, or obligations which it does not have or involve;" and (24) "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." TEX. BUS. & COM CODE § 17.46(b)(7), (12) & (24).

81.     Defendants' misrepresentations and failure to disclose information regarding the services Triumph was providing or failing to provide as the agent of the Coppertree Property were producing causes of Coppertree's damages, and they were intended to induce Coppertree into acquiring the management services from Triumph, which Coppertree would not have done had the true nature of the services been known.

82.     Defendants' conduct was committed recklessly, knowingly and/or intentionally, because at the time of their acts and representations Defendants had or should have had actual awareness of the falsity, deception or unfairness of their acts and representations and Coppertree detrimentally relied upon Defendants' acts and representations, which caused Coppertree's injury and damages.

### Count III – Negligence and Gross Negligence
### (Against Triumph, Ponte, Gates, Jones and Frericks)

83.     Coppertree re-alleges and incorporates each and every foregoing paragraph as if fully set forth herein.

**PLAINTIFF'S ORIGINAL PETITION**                                    **Page 19**

84.    Under Texas law, Triumph, Ponte, Gates, Jones and Frericks owed Coppertree a duty to exercise reasonable care in managing the Coppertree Property. In exchange, Triumph directly, and Ponte, Gates, Jones and Frericks indirectly, received compensation for their services.

85.    As set forth above, Defendants failed to exercise reasonable care in managing the Coppertree Property through their failures described above.

86.    As a direct and proximate cause of Defendants' breaches of their obligations to Coppertree, Coppertree suffered damages that it seeks to recover from Defendants, jointly and severally.

87.    Additionally, Coppertree seeks the recovery of exemplary damages because Defendants' acts and omissions rise to the level of gross negligence as defined in Tex. Civ. Prac. & Rem. Code § 41.001(11).

### Count IV – Negligent Misrepresentation
### (Against Triumph, Ponte, Gates, Jones and Frericks)

88.    Coppertree re-alleges and incorporates each and every foregoing paragraph as if fully set forth herein.

89.    In the course of their business of managing the Coppertree Property, Defendants negligently supplied false information to Coppertree. Defendants did not use reasonable care in obtaining or communicating the information and Coppertree justifiably relied on the false information.

90.    As a direct and proximate cause of these false representations, Coppertree suffered damages that it seeks to recover.

### Count V – Fraud (Against Triumph, Ponte, Gates, Jones and Frericks)

91.    In the alternative or in addition to the other Counts, Defendants committed fraud by making misrepresentations to Coppertree regarding their management of the Coppertree

**PLAINTIFF'S ORIGINAL PETITION**                                                    **Page 20**

Property.  When Defendants made the representations to Coppertree, the representations were material, the representations were false, and Defendants knew the representations were false, or they made the representation recklessly, as a positive assertion, and without knowledge of their truth.  Defendants made the representations with the intent that Coppertree would act on them, Coppertree relied on the representations, and Defendants' false representations caused Coppertree injury.

92.   Additionally, Defendants committed fraud by nondisclosure.   Defendants concealed from or failed to disclose certain facts to Coppertree.  Defendants had a duty to disclose the facts to Coppertree, the facts were material, and Defendants knew Coppertree was ignorant of the facts, and did not have an equal opportunity to discover the facts.  Defendants were deliberately silent when they had a duty to speak and by failing to disclose the facts, Defendants intended to induce Coppertree to take some action or refrain from acting.  Coppertree relied on Defendants' nondisclosure, and it was injured as a result of acting without the knowledge of the undisclosed facts.

### Count VI - Declaratory Judgment and Order to Deposit Funds Into the Registry of the Court (Against Triumph)

93.   Coppertree re-alleges and incorporates each and every foregoing paragraph as if fully set forth herein.

94.   An actual and immediate controversy exists between Coppertree and Triumph in connection with the funds in the amount of $638,878, which were originally deposited by an insurance company into the registry of a federal district court in Georgia and identified as premiums paid by insured property owners, including Coppertree (the "Funds").  These Funds have been or will be distributed to Triumph in accordance with the Georgia court's Consent Order dated December 12, 2019.  A portion of the Funds belong to Coppertree, but Triumph has failed

and refused to return Coppertree's share of the Funds to Coppertree.

95.    Because Triumph has failed to return any portion of the Funds to Coppertree, a bona fide dispute exists over what portion of the Funds belong to Coppertree and what portion belong to others.  Accordingly, under Texas Civil Practices and Remedies Code Sections 37.003 and 37.004, a justiciable controversy exists concerning the rights, status, and legal relations between the parties as to the Funds and Coppertree seeks a determination from the Court as to its rightful share.  Further, Coppertree requests that the Court order Triumph to deposit the Funds into the registry of this Court.

96.    Because of Triumph's multiple failures, other property owners have asserted claims or filed lawsuits against Triumph in multiple venues, seeking recovery of amounts that, on information and belief, would render Triumph insolvent.  In addition, on or about December 3, 2019, Weller Residential, a multifamily real estate investment company, publicly announced that it was acquiring certain assets of Triumph.  As a result of Weller Residential's acquisition of certain Triumph assets, Triumph has either ceased its operations or is in the process of doing so. Consequently, the Funds are in danger of being depleted.

97.    Because Coppertree is entitled to a portion of the Funds, Triumph has refused to return Coppertree's share to it, and the Funds are in danger of being depleted, the Court has the inherent power to order the Funds deposited into the registry of this Court, which Coppertree requests that the Court do.

### Count VII - Attorney's Fees

98.    Coppertree re-alleges and incorporates each and every foregoing paragraph as if fully set forth herein.

**PLAINTIFF'S ORIGINAL PETITION**                                                          **Page 22**

99.     As a result of Defendants' conduct, Coppertree has been forced to retain attorneys to pursue its claims.  Accordingly, Coppertree is entitled to recover its reasonable and necessary attorney's fees incurred in this action in accordance with Chapter 38 of the Texas Civil Practice & Remedies Code and Chapter 17 of the Texas Business & Commerce Code.

100.    Additionally, Coppertree seeks to recover its reasonable and necessary attorneys' fees and cost as are equitable and just under Texas Civil Practice & Remedies Code section 37.009.

## VIII.   DAMAGES

101.    As a result of Defendants' conduct, Coppertree has suffered economic damages in excess of $3,500,000, all of which it is entitled to recover, jointly and severally from Defendants. Coppertree's damages include all actual and consequential damages, statutory damages, and exemplary damages as a result of Defendants' breach of duties owed as described above.

102.    Pursuant to the DTPA, Coppertree is entitled to recover treble damages because Defendants' conduct and actions were committed knowingly.

## IX.    JURY DEMAND

103.    Coppertree demands a trial by jury and has tendered the appropriate fee.

## X.    CONDITIONS PRECEDENT

104.    All conditions precedent have been, or will be, met as required by law.

## XI.    DISCOVERY RULE

105.    Because Coppertree's injury and damages were inherently undiscoverable and/or fraudulently concealed, the discovery rule applies as to any alleged statute of limitations defense.

## XII.    REQUEST FOR DISCLOSURES

43.    Pursuant to Texas Rule of Civil Procedure 194.2, you are hereby requested to respond within 50 days of service of this request with information materials specified under Texas Rule of Civil Procedure 194.2(a)-(l).

## XIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Coppertree Village Holdings, LLC and Coppertree Apartments LLC request that Defendants be cited to appear and answer herein, that the Court order Triumph to deposit the Funds, as defined herein, into the registry of the Court, and that upon a final hearing judgment be entered for Plaintiffs and against Defendants for the following:

   a.   Plaintiffs' share of the Funds;

   b.   actual and consequential damages;

   c.   exemplary and punitive damages;

   d.   statutory damages and interest;

   e.   attorney's fees and expenses;

   f.   pre-judgment and post-judgment interest at the maximum rate allowed by law;

   g.   costs of court; and

   h.   all other and further relief, at law or in equity, to which Plaintiffs may show itself justly entitled.

**PLAINTIFF'S ORIGINAL PETITION**                                    **Page 24**

Respectfully submitted,


/s/ Carol C. Payne
Carol C. Payne
State Bar No. 0078865
Linda G. Moore
State Bar No. 14359500
ESTES THORNE & CARR PLLC
3811 Turtle Creek Blvd., Suite 2000
Dallas, Texas 75219
Telephone: (214) 599-4000
Telecopier: (214) 599-4099


ATTORNEYS FOR PLAINTIFFS COPPERTREE
VILLAGE HOLDINGS, LLC AND COPPERTREE
APARTMENTS LLC

**PLAINTIFF'S ORIGINAL PETITION**

**Page 25**

1/10/2020 4:05 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39870591
By: Kimberly Garza
Filed: 1/10/2020 4:05 PM



ESTES
THORNE
& CARR

3811 Turtle Creek Blvd.
Suite 2000
Dallas, Texas 75219
Phone: 214-599-4000
Fax: 214-599-4099
www.estesthornecarr.com

Direct Dial: 214-599-4007
Email: cpayne@estesthornecarr.com

January 8, 2020

**Via Email:** **lmoon@merlinlawgroup.com**
Triumph Housing Management, LLC
c/o Lawrence R. Moon
Merlin Law Group, P.A.
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018

      Re:    *Coppertree Village Holdings LLC et al. v. Triumph Housing Management LLC et al,* Cause No. 201990193-7, in the 157th District Court, Harris County, Texas

Dear Lawrence:

      Per our previous emails, you have indicated that you are authorized to and agree to accept service of process on behalf of Defendant Bradley Frericks in the above referenced action.  If this accurately reflects our agreement, please sign in the space provided below and return a copy of this letter to me.

                  Sincerely,

                  Carol C. Payne

CP/lat

AGREED TO:

_____
Lawrence Moon / J. Ryan Fowler
Merlin Law Group
Counsel for Defendants Triumph Housing Management, LLC, David Gates and Bradley Frericks